IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| PINNACLE OPPORTUNITIES, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.  08-3191 |
| AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, COUNCIL 31 AND ITS LOCAL 3348, AFL-CIO, | ) ) ) ) ) ) ) | |
| Defendant. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Defendant American Federation of State, County, and Municipal Employees, Council 31 and its Local 3348, AFL-CIO's (Union) Motion for Judgment on the Pleadings (d/e 12) (Motion). Plaintiff Pinnacle Opportunities, Inc. (Pinnacle), brought this action seeking to void an arbitration award made pursuant to the Collective Bargaining Agreement (CBA) between Pinnacle and the Union. The Union counterclaimed for an order declaring the arbitration award valid

1

and binding. The Union has moved for judgment on the pleadings. For the reasons set forth below, the Court allows the Motion. The arbitration award is valid and binding.

For purposes of the Motion, the Court may consider all pleadings, including the Complaint (d/e 1), Answer to Complaint (d/e 4), Counterclaim (d/e 6), and Pinnacle Opportunities, Inc.'s Answer to Defendant's Counterclaim (d/e 8), and attached Exhibits. Fed. R. Civ. P. 12(c); Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend, 163 F.3d 449, 452 (7th Cir. 1998). The Decision of the Arbitrator (Decision), attached as Exhibit B to the Complaint, is thus, part of the pleadings that may be considered by the Court.

Both parties have also submitted matters outside the pleadings. Motion, attached Affidavit of Catherine L. Struzynski; Plaintiff's Response to Defendant's Rule 12(c) Motion for Judgment on the Pleadings (d/e 15), attached Excerpts of Transcript of Proceedings before the Arbitrator. The Court will not consider those submissions. See Fed. R. Civ. P. 12(c); Northern Indiana Gun & Outdoor Shows, 163 F.3d at 452.

Rule 12(c) motions for judgment on the pleadings are reviewed under the same standard as Rule 12(b)(6) motions. Id. The Court must accept

as true all of Pinnacle's well-pleaded factual allegations and draw all inferences in the light most favorable to it. Hager v. City of West Peoria, 84 F.3d 865, 868-69 (7th Cir. 1996); Covington Court, Ltd. v. Village of Oak Brook, 77 F.3d 177, 178 (7th Cir. 1996). The Court, however, is not obligated to give any weight to unsupported conclusions of law. R.J.R. Services, Inc. v. Aetna Cas. and Sur. Co., 895 F.2d 279, 281 (7th Cir. 1989). When read in that light, judgment on the pleadings should be entered if the pleadings fail to set forth a short and plain statement of the claim showing that Pinnacle is entitled to relief. Fed. R. Civ. P. 8(a); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1969 (2007); Airborne Beepers & Video, Inc. v. AT&T Mobility LLC, 499 F.3d 663 (7th Cir. 2007).

## STATEMENT OF FACTS

Pinnacle is a not-for-profit corporation that operates ten group homes located in Kankakee, Illinois, providing residential care for developmentally disabled persons. The Union represents Pinnacle's employees under the terms of the CBA. The CBA sets forth a grievance process that provides, ultimately, for arbitration if a grievance is not otherwise resolved. The arbitration provision stated, in part:

> In abuse, neglect or exploitation cases, the arbitrator shall limit

> his/her decision to whether the employee engaged in abuse, neglect or exploitation. In these cases, the arbitrator may only consider the information the Employer had at the time it disciplined or discharged the employee. In addition, the arbitrator may consider any information provided to the Employer by the Union at the applicable grievance meeting. The arbitrator shall have no authority or jurisdiction to substitute his/her judgment for the discipline or penalty imposed by the Employer.

Complaint, Exhibit A, CBA, Art. 6, § 2. The CBA further stated that, "Disciplinary actions, if imposed, will be for just cause." CBA, art. 7, § 1.

On January 8, 2007, a resident at a Pinnacle group home named Dennis Poppel reported that, on January 7, 2007, Pinnacle employee Bobbie Thornton hit a fellow resident named Tony Nordstrom with her shoe. Pinnacle established an Investigation Committee (Committee) to look into the allegation. The Committee unanimously determined that the allegation was founded and that Thornton had hit Nordstrom with her shoe. Pinnacle then fired Thornton.

Thornton filed a grievance. The grievance went to arbitration. The arbitration hearing was held on January 28, 2008. As will be explained below, Poppel, Nordstrom, Thornton, and another Pinnacle employee Anthony Williams were the only witnesses to the incident. Pinnacle presented Poppel at the arbitration hearing as a witness, but Poppel could

4

not answer the questions presented. Decision, at 21. Pinnacle otherwise relied on the interviews and other investigative reports gathered by the Committee during the investigation. Pinnacle did not present either Nordstrom or Williams to testify at the arbitration hearing. Decision, at 21, 23.

The Arbitrator issued the Decision on May 31, 2008. The Arbitrator first set forth the history of the grievance process and relevant provisions of the CBA. The Arbitrator then set forth the factual background. On January 8, 2007, Poppel told Pinnacle staff members Leola Forman and John Copeland that they had "missed the action" the day before when Nordstrom cursed at Thornton, and Thornton then hit Nordstrom on the head with her shoe, "bam, bam, bam." Decision, at 8-9. The Arbitrator noted that Poppel was severely mentally retarded, was on medications and participated in programs for "maladaptive behavior" including physical aggression, hoarding, and inappropriate verbalization. Pinnacle employee Lynn Diming-Morris testified that Poppel, "makes up stories and lies a few times per week." Decision, at 9.

Forman and Copeland reported the allegations to their supervisor, Beverly Brewster. Brewster then interviewed Poppel. Poppel confirmed his

5

story to Brewster. Brewster reported the matter to her supervisor, Anna Corso. Corso suspended Thornton and set up the Committee to investigate the allegations. The Committee interviewed the residents and staff. Thornton denied hitting Nordstrom. Thornton stated that she used her shoe to hit and kill a spider on the wall above where Nordstrom was seated. Decision, at 9-10.

The only other employee working at the home at the time was Anthony Williams. Williams did not see the incident, but reported hearing some banging. According to the Committee's investigative reports, Williams heard Nordstrom say, "Stop hitting me." Decision, at 23.

Upon completion of the investigation, the Committee unanimously determined that the allegations were founded and that Thornton had hit Nordstrom. Pinnacle then fired Thornton. Corso also then reported the incident to the Illinois Department of Public Health and to the police. The Arbitrator noted, "The record demonstrates that the Department of Public Health did not investigate this alleged instance of abuse and [Thornton] was never placed on the 'Nurse Aid Registry' with a finding of abuse." Decision, at 11.

The Arbitrator's Decision then summarized the positions of Pinnacle

and the Union. <u>Decision</u>, at 12-18. The Arbitrator stated, in part, that the Union contended that Poppel's lack of credibility was further demonstrated when he subsequently accused another Pinnacle employee, John Copeland, of hitting Nordstrom. During the investigation of this later allegation involving Copeland, Poppel changed his story, and Pinnacle determined that Poppel's allegations against Copeland were unfounded. <u>Decision</u>, at 16.

The Arbitrator then set forth his findings. <u>Decision</u>, at 18-25. The Arbitrator placed the burden of proof on Pinnacle, and further, decided that Pinnacle had to prove that Thornton hit Nordstrom by clear and convincing evidence. <u>Decision</u>, at 19. The Arbitrator determined that the Committee interview reports and other investigative reports were hearsay that did not constitute clear and convincing evidence by themselves. <u>Decision</u>, at 21. The Arbitrator determined that Pinnacle needed to present testimony from witnesses with personal knowledge to meet its burden. <u>Decision</u>, at 22-23. The only witness with personal knowledge was Poppel, but he was incapable of answering questions. <u>Decision</u>, at 21. Thus, Pinnacle failed to meet its burden of proof. <u>Decision</u>, at 22. The Arbitrator ordered Pinnacle to reinstate Thornton with back pay and benefits, and to expunge any reference of this incident from her personnel record. <u>Decision</u>, at 24.

In making the Decision, the Arbitrator noted, "Simply stated, this record is devoid of any firsthand, eye-witness account, to corroborate that contained in the hearsay statements present. Such, particularly in light of the individuals involved, is neither reliable nor sufficient to satisfy just cause to support the termination." Decision, at 22. The Arbitrator also stated in his findings that Poppel "has a propensity for manufacturing stories about both Residents and staff at this Facility." Decision, at 24. The Arbitrator also stated, "[I]t is important to note the Illinois Department of Public Health (Department) did not issue a finding of Abuse. And, [Thornton] was never placed on the Nurse Aid Registry with a finding of Abuse." Decision, at 23.

Pinnacle then brought this action to challenge the arbitration award. Pinnacle alleged that the Arbitrator exceeded the scope of his authority granted under the CBA because he relied on the evidence that was not before Pinnacle when it made the decision to fire Thornton. Article 6 of the CBA, quoted above, prohibited the Arbitrator from considering evidence that was not available to Pinnacle at the time that it fired Thornton. Complaint, ¶¶ 16-20. Pinnacle alleged that the Arbitrator relied on such improper evidence that: (1) the Department did not issue a finding of abuse

8

or indicate in its Nurse Aid Registry that Thornton had a finding of abuse; and (2) Poppel was not a reliable witness due to his subsequent unfounded claim that Copeland hit Nordstrom.

## ANALYSIS

This Court has authority to enforce arbitration awards made pursuant to labor agreements. 29 U.S.C. § 301; United Steel Workers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596 (1960). The Arbitrator has broad authority to interpret and apply the CBA in making his award. The award is enforceable as long as the Arbitrator's decision "draws its essence" from the CBA. Ethyl Corp. v. United Steelworkers of America, AFL-CIO-CLC, 768 F.2d 180, 184 (7th Cir. 1985) (quoting Enterprise Wheel & Car Corp., 363 U.S. at 597). The Arbitrator is not required to express his decision with great precision, "A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award." Enterprise Wheel & Car Corp., 363 U.S. at 598. This Court can only refuse to enforce an award if the Arbitrator must have based the award on some body of thought, or feeling, or policy or law that is outside of the CBA. Ethyl Corp., 768 F.2d at 185. If "the arbitrator's words manifest an

infidelity" to the words of the bargaining agreement, the, "courts have no choice but to refuse enforcement of the award." Enterprise Wheel & Car Corp., 363 U.S. at 597.

In this case, the Arbitrator's decision represents a reasonable interpretation of the CBA. The CBA states that in abuse cases "the arbitrator shall limit his/her decision to whether the employee engaged in abuse, neglect or exploitation." CBA, art. 6 § 2. The CBA also states that Pinnacle can discipline employees for just cause. CBA, art. 7 § 1. The Arbitrator interpreted these provision to require Pinnacle to prove to the Arbitrator by clear and convincing evidence that Thornton hit Nordstrom. If so, then Pinnacle had just cause for the firing; if Pinnacle could not meet the burden of proof, then just cause would not be established and Thornton's grievance would be sustained. Decision, at 19, 23. This was a reasonable interpretation. The CBA is silent on issues of the allocation of the burden of proof and the level of proof required. Pinnacle does not dispute that the Arbitrator could require it to present clear and convincing evidence that Thornton hit Nordstrom.

The Arbitrator then concluded that Pinnacle had failed to meet that burden of proof. Decision, at 20-22. That was the essential basis of the

Decision. That Decision was within the Arbitrator's authority under the CBA.

Pinnacle argues the Arbitrator improperly based his decision on the Department's decision not to investigate and not to place a notation on the Nurse Aid Registry. Pinnacle correctly notes that the Arbitrator was limited to the evidence that was available to Pinnacle at the time of the firing, and the Department's actions occurred after Pinnacle had fired Thornton. The Arbitrator's reference to the Department, however, at best, only created an ambiguity. The Arbitrator clearly decided the grievance against Pinnacle because Pinnacle did not meet its burden of proof. The Arbitrator's allusion to the Department was dicta that only created an ambiguity and did not provide a reason for refusing to enforce the award. Enterprise Wheel and Car Corp., 363 U.S. at 598.

Pinnacle also argues that the Arbitrator improperly relied on evidence concerning the reliability of Poppel that was not available at the time that Pinnacle made its decision. The Court disagrees. The Arbitrator stated in his summary of the Union's contentions that the Union argued that Poppel was not reliable because Poppel subsequently made up a story about Copeland hitting Nordstrom, and the incident involving Copeland occurred

11

after Pinnacle fired Thornton. The Arbitrator, however, did not refer to the Poppel's allegation against Copeland either in his statement of the facts or his discussion of his findings; he only mentioned it in his summary of the Union's contentions. Thus, the Arbitrator did not rely on that evidence. The Arbitrator stated in his findings that Poppel was not a reliable witness. Pinnacle employee Diming-Morris testified that Poppel was always making up stories. Pinnacle, thus, had evidence available at the time that it fired Thornton that Poppel was not a reliable witness. The Arbitrator's finding on Poppel's credibility was supported by competent evidence.

Pinnacle alleged no other infirmities in the Decision. The pleadings, therefore, establish that the Decision is valid and enforceable. The Union is entitled to judgment on the pleadings.

## Rule 11 Sanction Request

The Union asks for the Court to impose sanctions on Pinnacle for violation of Federal Rule of Civil Procedure 11. <u>Memorandum in Support of Motion for Judgment on the Pleadings (d/e 12)</u>, at 10-11. The Union failed to present this request properly. Requests for sanctions must be made by separate motion and the motion must be served twenty-one days before it is filed. <u>Fed. R. Civ. P.</u> 11(c)(2). The Union failed to comply with these

requirements.  The request is therefore denied.  The Court further notes that the Arbitrator's reference to the Department's actions provided a good faith basis for challenging the Decision for purposes of Rule 11.

THEREFORE, Defendant American Federation of State, County, and Municipal Employees, Council 31 and its Local 3348, AFL-CIO's Motion for Judgment on the Pleadings (d/e 12) is ALLOWED.  Judgment is entered in favor of Defendant American Federation of State, County, and Municipal Employees, Council 31 and its Local 3348, AFL-CIO, and against Plaintiff Pinnacle Opportunities, Inc., on the Complaint and Counterclaim.  The Court hereby declares that the Decision of the Arbitrator is valid and enforceable.  Plaintiff is directed to comply with the Decision of the Arbitrator.  The request for sanctions is denied.  All pending motions are denied as moot.  This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER:   January 28, 2009

    FOR THE COURT:

                                    s/ Jeanne E. Scott
                                  JEANNE E. SCOTT
                      UNITED STATES DISTRICT JUDGE